Annmarie Chiarello
Texas Bar No. 24097496
Steffen R. Sowell[1]
Texas Bar No. 24107926
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone:  (214) 745-5400
Facsimile:  (214) 745-5390
E-mail:  achiarello@winstead.com
E-mail:  ssowell@winstead.com

**ATTORNEYS FOR JASON SUBOTKY,
INDIVIDUALLY AND AS TRUSTEE
FOR THE JASON SUBOTKY FAMILY
REMAINDER TRUST, STEPHEN
YACKTMAN, INDIVIDUALLY AND
AS TRUSTEE FOR THE STEPHEN
YACKTMAN FAMILY REMAINDER
TRUST AND THE ELLYN
YACKTMAN FAMILY REMAINDER
TRUST, AND ELLYN YACKTMAN
INDIVIDUALLY**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **EVE FINANCIAL, INC.,** | § | **CASE NO. 23-43335 (MXM)** |
| | § | **(Chapter 11)** |
| **DEBTOR** | § | |

**STATEMENT OF WINSTEAD PC IN ACCORDANCE WITH
FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019(a)**

**TO THE HONORABLE MARK X. MULLIN, U.S. BANKRUPTCY JUDGE:**

Winstead PC ("Winstead"), as counsel to Jason Subotky, individually and in his capacity

as Trustee for the Jason Subotky Family Remainder Trust, Stephen Yacktman, individually and

in his capacity as Trustee for the Stephen Yacktman Family Remainder Trust and the Ellyn

---

[1] Resident in Winstead's Houston office 600 Travis Street, Suite 5200, Houston, Texas 77002, Telephone:  (713) 650-8400, Facsimile: (713) 650-2400.

Yacktman Family Remainder Trust, and Ellyn Yacktman, individually (collectively, the "Judgment Creditors"), hereby submits this verified statement ("Statement") pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 2019") with respect to Winstead's representation of the Judgment Creditors and respectfully states the following:

1.      On December 6, 2022, the Judgment Creditors filed their Original Petition (the "Petition") under the matter titled and styled:  *Jason Subotky, individually and in his capacity as Trustee for the Jason Subotky Family Remainder Trust, Stephen Yacktman, individually and in his capacity as Trustee for the Stephen Yacktman Family Remainder Trust and the Ellyn Yacktman Family Remainder Trust, and Ellyn Yacktman, individually v. Eve Financial, Inc.*, Cause No. D-1-GN-22-006979, before the 345th Judicial District Court of Travis County, Texas (the "State Court").

2.      On August 7, 2023, the State Court entered the Order Granting Final Summary Judgment (the "State Court Judgment") against the Debtor, awarding the Judgment Creditors $2,464,673.46, together with interest in the amount of eighteen (18) percent per annum to accrue from December 4, 2022, until and unless such judgment is satisfied in its entirety, plus $30,000.00 for attorneys' fees and court costs (collectively, the "Judgment Amount").  A true and correct copy of the State Court Judgment is attached hereto as Exhibit "A" and incorporated herein for all purposes.  Terms not defined herein have the meanings ascribed to such terms by the State Court Judgment.

3.      The State Court Judgment is final and has not been superseded by any bond or security.  The State Court Judgment was not timely appealed.

---

4.      On November 1, 2023 (the "Petition Date"), Eve Financial Inc. ("Eve") filed its voluntary petition for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et. seq. (the "Bankruptcy Code"), thereby initiating the Bankruptcy Case.

5.      As of the Petition Date, the Debtor was indebted to the Judgment Creditors in the amount of at least $2,898,204.65, less all applicable credits, plus all other fees, interest, costs, and expenses incurred and that continue to accrue with respect to the State Court Judgment, including, but not limited to, attorneys' fees and costs, in addition to the Judgment Creditors' future attorneys' fees and costs in an as yet to be determined amount, to the extent permitted by the Bankruptcy Code and applicable law (collectively, the "Claim").  On January 7, 2024, the Judgment Creditors filed their Proof of Claim at Claim No. 3-1.

6.      Winstead represented the Judgment Creditors in connection with the transaction that underlies the State Court Judgment, the State Court proceedings, and now this bankruptcy case.

7.      The addresses for the Judgment Creditors are listed on the attached signature page.

8.      As of the date of this Statement, Winstead represents only the Judgment Creditors and does not represent or purport to represent any entities other than the Judgment Creditors in connection with these cases.  In addition, the Judgment Creditors do not claim or purport to represent any other entity.

9.      Upon information and belief formed after due inquiry, Winstead holds no claim against, or interests in, the Debtor or its estate.  Winstead's Houston address is 600 Travis Street, Suite 5200, Houston, Texas 77002.  Winstead's Dallas address is 500 Winstead Building, 2728

N. Harwood Street, Dallas, Texas 75201.  Winstead's Austin address is 401 Congress Avenue, Suite 2100, Austin, Texas 78701.

10. The Judgment Creditors have received full disclosure of Winstead's representation of the Judgment Creditors in the Bankruptcy Case, and the Judgment Creditors have consented to Winstead's joint representation.  The Judgment Creditors have not formed a "committee," as that term is used in Bankruptcy Rule 2019.  Winstead reserves the right to amend and/or supplement this Statement as required by Bankruptcy Rule 2019.

11. Nothing contained in this Statement should be construed as (i) a waiver or release of any claims against the Debtor; (ii) an admission with respect to any fact or legal theory; or (iii) a limitation upon, or waiver of, any of the Judgment Creditors rights to file and/or amend a proof of claim in accordance with applicable law and any orders entered in these cases establishing procedures for filing proofs of claim or interests.

12. Winstead submits this Statement out of an abundance of caution, and nothing herein should be construed as an admission that the requirements of Bankruptcy Rule 2019 apply to Winstead's representation of the Judgment Creditors.

13. The undersigned verify that the foregoing is true and correct to the best of their knowledge.  Winstead reserves the right to amend or supplement this Statement.  The information contained herein is intended only to comply with Bankruptcy Rule 2019 and is not intended for any other use or purpose.

**DATED:  February 5, 2024.**

Respectfully submitted,

By: */s/ Annmarie Chiarello*
Annmarie Chiarello

Texas Bar No. 24097496
Steffen R. Sowell
Texas Bar No. 24107926
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone:  (214) 745-5400
Facsimile:  (214) 745-5390
E-mail:  achiarello@winstead.com
E-mail:  ssowell@winstead.com

**ATTORNEYS FOR JASON SUBOTKY, INDIVIDUALLY AND IN HIS CAPACITY AS TRUSTEE FOR THE JASON SUBOTKY FAMILY REMAINDER TRUST, STEPHEN YACKTMAN, INDIVIDUALLY AND IN HIS CAPACITY AS TRUSTEE FOR THE STEPHEN YACKTMAN FAMILY REMAINDER TRUST AND THE ELLYN YACKTMAN FAMILY REMAINDER TRUST, AND ELLYN YACKTMAN INDIVIDUALLY**

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2024, a true and correct copy of the foregoing was electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Annmarie Chiarello*
One of Counsel

## VERIFICATION UNDER 28 U.S.C. § 1746

I verify, under penalty of perjury, that I have read the foregoing statement of Winstead and that the statements therein are true and correct.

Executed on January 30, 2024.

_____
Jason Subotky[1]

**Jason Subotky Family Remainder Trust**

_____
Jason Subotky, Trustee[2]

_____
Stephen Yacktman[3]

_____
Ellyn Yacktman[4]

**The Ellyn Yacktman Family Remainder Trust**

_____
Stephen Yacktman, Trustee[5]

---

[1] Jason Subotky, Title: Individually, Address: 1722 San Remo Drive, Pacific Palisades, CA 90272. Phone: (650) 814-7717, Email: JasonSubotky@yahoo.com.

[2] Jason Subotky Title: Trustee, Address: 1722 San Remo Drive, Pacific Palisades, CA 90272, Phone: (650) 814-7717, Email: JasonSubotky@yahoo.com.

[3] Stephen Yacktman, Title: Individually, Address: 3571 Far West Blvd., #82, Austin, TX 78731, Phone: (847) 530-9010, Email: Stephen@yacktman.email.

[4] Ellyn Yacktman, Title: Individually, Address: 3571 Far West Blvd., #82, Austin, TX 78731, Phone: (847) 530-9010, Email: eyacktman@yahoo.com.

[5] Stephen Yacktman, Title: Trustee, Address: 3571 Far West Blvd., #82, Austin, TX 78731, Phone: (847) 530-9010, Email: Stephen@yacktman.email.

---

**STATEMENT OF WINSTEAD PC IN ACCORDANCE WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019(a)**

## VERIFICATION UNDER 28 U.S.C. § 1746

I verify, under penalty of perjury, that I have read the foregoing statement of Winstead and that the statements therein are true and correct.

**Executed on January 30, 2024.**

_____

Jason Subotky[1]

**Jason Subotky Family Remainder Trust**

_____

Jason Subotky, Trustee[2]

_____

Stephen Yacktman[3]

_____

Ellyn Yacktman[4]

**The Ellyn Yacktman Family Remainder Trust**

_____

Stephen Yacktman, Trustee[5]

---

[1] Jason Subotky, Title: Individually, Address: 1722 San Remo Drive, Pacific Palisades, CA 90272. Phone: (650) 814-7717, Email: JasonSubotky@yahoo.com.

[2] Jason Subotky Title: Trustee, Address: 1722 San Remo Drive, Pacific Palisades, CA 90272, Phone: (650) 814-7717, Email: JasonSubotky@yahoo.com.

[3] Stephen Yacktman, Title: Individually, Address: 3571 Far West Blvd., #82, Austin, TX 78731, Phone: (847) 530-9010, Email: Stephen@yacktman.email.

[4] Ellyn Yacktman, Title: Individually, Address: 3571 Far West Blvd., #82, Austin, TX 78731, Phone: (847) 530-9010, Email: eyacktman@yahoo.com.

[5] Stephen Yacktman, Title: Trustee, Address: 3571 Far West Blvd., #82, Austin, TX 78731, Phone: (847) 530-9010, Email: Stephen@yacktman.email.

---

**STATEMENT OF WINSTEAD PC IN ACCORDANCE WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019(a)**

**The Stephen Yacktman Family Remainder Trust**

Stephen Yacktman, Trustee[6]

---

[6] Stephen Yacktman Title: Trustee, Address: 3571 Far West Blvd., #82, Austin, TX 78731, Phone: (847) 530-9010, Email: Stephen@yacktman.email.

---

**STATEMENT OF WINSTEAD PC IN ACCORDANCE WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019(a)**                                                                          **Page 7 of 7**

4866-2208-2718v.2 46645-18 1/30/2024

08/07/2023 05:28:20 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-22-006979

## CAUSE NO. D-1-GN-22-006979

| | | |
|---|---|---|
| JASON SUBOTKY, individually and as Trustee for the JASON SUBOTKY FAMILY REMAINDER TRUST, STEPHEN YACKTMAN, individually and as Trustee for the STEPHEN YACKTMAN FAMILY REMAINDER TRUST and the ELLYN YACKTMAN FAMILY REMAINDER TRUST, and ELLYN YACKTMAN, individually | § § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| v. | § § | |
| EVE FINANCIAL, INC., | § § | TRAVIS COUNTY, TEXAS |
| *Defendant.* | § | 345ᵀᴴ JUDICIAL DISTRICT |

### ORDER GRANTING FINAL SUMMARY JUDGMENT

On this day, the Court heard the Amended Traditional Motion for Summary Judgment filed by Plaintiffs Jason Subotky, individually and in his capacity as Trustee for the Jason Subotky Family Remainder Trust, Stephen Yacktman, individually and in his capacity as Trustee for the Stephen Yacktman Family Remainder Trust and the Ellyn Yacktman Family Remainder Trust, and Ellyn Yacktman, individually (together, "Plaintiffs") against Defendant Eve Financial, Inc. (the "Motion"). The Court, having considered the Motion, the summary judgment evidence, and the argument of counsel, finds that the Motion should be granted. It is, therefore,

**ORDERED** by the Court that judgment be entered in favor of Plaintiffs and against Defendant Eve Financial, Inc. on Plaintiffs' breach of contract claim. It is further

**ORDERED** that Plaintiffs shall have and recover from Defendant Eve Financial, Inc. the Repurchase Price (as that term is defined in the Stock Repurchase Agreement attached herein) of $2,464,673.46, together with interest at 18% per annum, accruing from December 4, 2022 until this Final Judgment is satisfied in full. It is further

**ORDER GRANTING FINAL SUMMARY JUDGMENT**

**ORDERED** that Plaintiffs shall have and recover from Defendant $30,000.00 for attorneys' fees and all costs of court. It is further

**ORDERED** that Plaintiffs shall transfer, assign, and convey to Defendant the Repurchase Shares (as that term is defined in the Stock Repurchase Agreement attached as "Exhibit A" to the Motion) only upon full payment of the Repurchase Price and all interest accrued thereon, along with all attorneys' fees and court costs awarded hereunder.

This is a Final Judgment and finally disposes of all claims and all parties, and is subject to appeal.

SIGNED on this 7th day of August, 2023.

JUDGE PRESIDING
JESSICA MANGRUM

**ORDER GRANTING FINAL SUMMARY JUDGMENT**

## STOCK REPURCHASE AGREEMENT

### August 5, 2022

THIS STOCK REPURCHASE AGREEMENT (this "*Agreement*") is made, as of the date first written above (the "*Effective Date*"), by and between Eve Financial, Inc., a Delaware corporation (the "*Company*"), and Jason Subotky, Jason Subotky Family Remainder Trust, Stephen Yacktman, Ellyn Yacktman, The Ellyn Yacktman Family Remainder Trust, and The Stephen Yacktman Family Remainder Trust (each a "*Seller*," and collectively the "*Sellers*," and together with the Company, each a "*Party*" and collectively, the "*Parties*").

WHEREAS, the Sellers are to sell, and the Company is to purchase, the number of Shares set forth on Exhibit A (the "*Repurchased Shares*") in exchange for an amount equal to the amount set forth on Exhibit A hereto (the "*Repurchase Price*"), upon the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.      Purchase and Sale of Repurchased Shares.

a.      Number of Shares and Price Per Share.  Subject to the terms and conditions of this Agreement, each Seller hereby agrees to sell and transfer at the Closing (as defined below), and the Company hereby agrees to repurchase and acquire, the Repurchased Shares in exchange for the Repurchase Price (each such repurchase and sale being the "*Repurchase*").  The Repurchase Price will be paid to Sellers by the Company in the form of cash or a check or wire transfer of immediately available funds.

b.      Further Assurances.  Absent any good-faith disputes, the Company and each Seller will cooperate with each other and will execute and deliver such other instruments and documents and take such other actions as may reasonably be requested from time to time by any other Party hereto as necessary to carry out, evidence and confirm the intended purposes of this Agreement.

2.      Closing Date; Delivery.

a.      Closing Date.   The closing of the transactions contemplated hereunder (the "*Closing*") shall be held remotely at the election of the Company on such date and at such time as determined by the Company in its sole discretion (the date on which the Closing actually occurs is hereinafter referred to as the "*Closing Date*"); provided, that, the Closing shall occur no later than the 120th day after the Effective Date (the "*Closing Deadline*"). The Company shall provide written notice to the Sellers, and one counsel for the Sellers (which shall not constitute notice hereunder) of such election at least five (5) business days prior to the Closing Date (the "*Closing Notice*").  The Parties acknowledge that Sellers shall be entitled to specific performance if Company does not timely complete the Closing, including without limitation, payment of the Repurchase Price in its entirety.  The Parties acknowledge that the Company shall be entitled to specific performance if (i) the Company is in compliance with the terms of this Agreement, and (ii) any Seller does not timely complete the Closing, including without limitation performing its obligations as set forth in Sections 2(b)(i) and 3 below.  Notwithstanding the foregoing, Company shall be entitled to specific performance for a limited period of up to 6 months after the Effective Date, if Company is not in compliance with or has not remained in compliance with the terms of this Agreement and any Seller has not timely completed the Closing.

SY_00001

b.    Delivery.  At the Closing, (i) each Seller will deliver to the Company a duly-executed stock power in the form attached hereto as Exhibit B or other evidence of transfer reasonably requested by the Company with respect to the Repurchased Shares owned by such Seller and (ii) the Company shall deliver to each Seller the Repurchase Price payable with respect to such Seller's Repurchased Shares in the form of a wire transfer of immediately available funds.

3.    Conversion of Shares.  Each Seller hereby elects to convert all shares of Series A Preferred Stock and Series A-1 Preferred Stock (other than the Repurchased Shares) to Common Stock in accordance with Article Four, Section 2.4(a) of the Company's Fourth Amended and Restated Certificate of Incorporation (the "**Restated Certificate**"), effective subject to and simultaneously with the Closing (the shares so converted, the "**Remaining Shares**") and shall comply with the provisions set forth in Section 2.4(a) of the Restated Certificate with respect to such conversion in a timely manner.

4.    [Reserved].

5.    Good and Marketable Title.  Each Seller, for himself or itself and no others, hereby represents and warrants to the Company that such Seller is the record and beneficial owner of, and has good and marketable title to, the Repurchased Shares held by such Seller as set forth on Exhibit A, free and clear of all liens, voting trusts, proxies and other arrangements or restrictions of any kind whatsoever (collectively, "**Encumbrances**"), excluding any liens, voting trusts, proxies and other arrangements or restrictions of any kind whatsoever created by (i) securities laws or (ii) the governing documents of the Company or other documents to which the Company is a party which govern the rights of the Shares in any way, including, without limitation, that certain Second Amended and Restated Right of First Refusal and Co-Sale Agreement, as the same may be amended, dated on or about June 21, 2021 (the "**ROFR Agreement**") and that certain Second Amended and Restated Voting Agreement, as the same may be amended, dated on or about June 21, 2022 (the "**Voting Agreement**"), that certain Second Amended and Restated Investors' Rights Agreement, as the same may be amended, dated on or about of June 21, 2021 (the "**Investors' Rights Agreement**") (collectively, the "**Permitted Encumbrances**"), and that at the time of Closing, such Seller shall sell and deliver to the Company good and marketable title to such shares, free and clear of all Encumbrances other than the Permitted Encumbrances.

6.    Company Representations and Covenants.  Company represents and covenants to each of Sellers, as follows:

a.    Authority.  Company is duly authorized to enter into this Agreement and has obtained all requisite corporate consents in furtherance of the same, a copy of each of which is attached as Exhibit C to the Agreement.  A compliance certificate executed by the Chief Executive Officer of the Company is attached certifying to the truthfulness of all Company representations made hereunder and such officer's covenant to carry out all of Company's obligations hereunder is attached as Exhibit D.

b.    No Subsidiaries.  Except for the Company's 100% ownership of (i) EFCCH1, a Delaware statutory trust ("**EFCCH1**") and (ii) EFCCB1, a Delaware Statutory Trust ("**EFCCB1**"), the Company does not currently have any subsidiaries, whether wholly or partly owned, nor will it create any without the prior written consent of Sellers prior to the Closing.

7.    No Transactions with Affiliates.  Prior to the Closing Date, no transactions with any affiliate, subsidiary or beneficial equity owner of the Company shall be permitted, including for avoidance of doubt with EFCCH1 and EFCCB1, except for closings under the Company's Series A-3 financing pursuant to the financing documents to be entered into on or about the date hereof, copies of which have been provided to counsel to the Sellers, or any other transaction in the ordinary course of business and upon

SY_00002

terms that reflect current fair market value as would be customary in an arms-length business transaction, with notice of any such transactions and the expected terms thereof to be given to Sellers at least 5 business days prior to the closing of such transaction.

8. <u>Restrictions on Transfer</u>. Company shall not prior to the Closing without the written consent of Sellers enter into any transaction or series of transactions in which any of the following occurs: (a) a majority of the voting shares of capital stock of the Company are no longer held by the holders of the same as of the Effective Date; (b) a sale of all or substantially all of the assets of the Company; (c) an exclusive license of any of the intellectual property assets of the Company; or (d) any merger or business combination transaction.

9. <u>Release</u>.

a. Subject to the timely receipt by the Seller of the Repurchase Price, effective upon the Closing, each Seller, on behalf of itself,  and on behalf of its heirs, legal representatives, subsidiaries, directors, officers, trustees, affiliates, successors and assigns (collectively, the "*Releasor Parties*"), does hereby fully and irrevocably waive, release and discharge the Company (the "*Release*"), and its predecessors, successors, direct or indirect subsidiaries, affiliates, past and present stockholders, directors, officers, employees, agents, attorneys, professional advisors and representatives (collectively the "*Released Parties*"), from any and all liabilities and obligations to the Seller arising from the Repurchased Shares and the conversion of the Remaining Shares pursuant to Section 3 of this Agreement, whether absolute or contingent, liquidated or unliquidated, known or unknown, and whether arising hereunder or under any other agreement or understanding or otherwise at law or equity, which arise out of or relate to the ownership, and the sale hereunder, of the Company's Repurchased Shares and the conversion of the Remaining Shares pursuant to Section 3 of this Agreement (collectively, the "*Released Claims*"), and each Seller shall not seek to recover any amounts in connection with any Released Claim from any of the Released Parties. Notwithstanding the preceding sentence, "Released Claims" does not include claims, liabilities, damages, demands and causes of action available to the Releasor Parties, with respect to (i) the obligations of the Company under this Agreement which are to be performed at or after the Closing  and (ii) any matters related to the Remaining Shares. Each Seller hereby irrevocably agrees to, and to cause each Releasor Party to, refrain from directly or indirectly asserting any claim or demand or commencing (or allowing to be commenced on such Releasor Party's behalf) any suit, action or proceeding of any kind, in any agency, court or before any tribunal, against any Released Party based upon any Released Claim, it being the intent of the Sellers that upon the Closing, the Released Parties will be absolutely, unconditionally and forever discharged of and from any and all obligations related in any way to the Released Claims. Each Seller hereby represents and warrants to the Released Parties that Seller has made no assignment or transfer of any of the Released Claims.

b. Effective upon the Closing, the Company, on behalf of itself, and on behalf of its heirs, legal representatives, subsidiaries, directors, officers, trustees, affiliates, successors and assigns (collectively, the "*Company Releasor Parties*"), does hereby fully and irrevocably waive, release, discharge the Sellers (the "*Seller Release*"), and their respective predecessors, successors, direct or indirect subsidiaries, affiliates and past and present stockholders, directors, officers, employees, agents, attorneys, professional advisors and representatives (collectively the "*Seller Released Parties*"), from any and all liabilities and obligations to the Company whether absolute or contingent, liquidated or unliquidated, known or unknown, and whether arising hereunder or under any other agreement or understanding or otherwise at law or equity, which arise out of or relate to the ownership, and the sale hereunder, of the Company's equity securities or the Company's business in any way (collectively, the "*Seller Released Claims*"), and the Company shall not seek to recover any amounts in connection with any Seller Released Claim from any of the Seller Released Parties. Notwithstanding the preceding sentence, "Seller Released

SY_00003

Claims" does not include claims, liabilities, damages, demands and causes of action available to the Company Releasor Parties, with respect to the obligations of any Seller under this Agreement which are to be performed at or after the Closing. The Company hereby irrevocably agrees to, and to cause each Company Releasor Party to, refrain from directly or indirectly asserting any claim or demand or commencing (or allowing to be commenced on such Company Releasor Party's behalf) any suit, action or proceeding of any kind, in any agency, court or before any tribunal, against any Seller Released Party based upon any Seller Released Claim, it being the intent of the Company that upon the Closing, the Seller Released Parties will be absolutely, unconditionally and forever discharged of and from any and all obligations related in any way to the Seller Released Claims. The Company hereby represents and warrants to the Seller Released Parties that Company has made no assignment or transfer of any of the Seller Released Claims.

c.      The Releasor Parties and Company Releasor Parties hereby expressly waive any and all rights granted to them under Section 1542 of the California Civil Code (or any analogous state law or federal law or regulation), which reads as follows:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

10.     No Violation. Each Seller, for himself or itself and no others, hereby represents and warrants to the Company that (a) such Seller has all requisite power and authority to enter into this Agreement and to consummate the transactions contemplated hereby, (b) the execution and delivery of this Agreement, and the performance of the obligations contemplated hereby, has been duly authorized by all necessary action on the part of such Seller, and no further action is required on the part of such Seller to authorize this Agreement or the performance of the obligations contemplated hereby, and (c) this Agreement constitutes the valid and binding obligation of such Seller, enforceable against such Seller in accordance with its terms, except as such enforceability may be subject to laws of general application relating to bankruptcy, insolvency and the relief of debtors, and to laws governing injunctive relief or other equitable remedies.

11.     Assignment. No Party may assign this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other Parties (provided that the Company may assign its right to purchase all or a portion of the Repurchase Shares without the written approval of any Party; provided further the Company shall provide prior notice to each Seller via email and the Company shall remain liable for all its obligations under this agreement notwithstanding any such permitted assignment). Subject to the prior sentence, any such Party seeking to assign any rights or obligations under this Agreement shall be responsible or obtaining any and all required consents, waivers, or similar permissions, as the case may be, prior to such assignment. Notwithstanding any of the foregoing, no assignment or purported assignment by Company shall be valid under this Agreement unless: (i) Company has performed commercially reasonable financial diligence with respect to such assignee, including without limitation a verification that such assignee at the time of the assignment maintains an account or accounts containing sufficient funds to pay the Repurchase Price as of the Closing; (ii) such assignee is not a "covered person" as defined by the Rule 506 of Regulation D, as adopted and amended by the U.S. Securities and Exchange Commission; and (c) such assignment would not impair any such Seller's reputation or result in the violation of any law. This Agreement will be binding upon and inure to the benefit of and be enforceable by the successors and permitted assigns of the parties hereto.

SY_00004

12. <u>Consultation with Advisors; Taxes</u>. Each Party acknowledges that such Party has had the opportunity to have this Agreement reviewed by attorneys, tax advisors and other professional advisors of such Party's choice, and that such Party either (a) has consulted with attorneys and other professional advisors before executing and delivering this Agreement, or (b) has voluntarily and freely chosen not to consult with attorneys and other professional advisors before executing and delivering this Agreement. Each Seller has reviewed with such Seller's own tax advisors the U.S. federal, state, local and foreign tax consequences of this Agreement and the transactions contemplated by this Agreement.   Each Seller understands that such Seller (and not the Company) shall be solely responsible for such Seller's own tax liability that may arise as a result of this Agreement and/or the transactions contemplated by this Agreement.

13. <u>Volitional Transaction</u>. Each Seller has entered into this Agreement based on such Seller's own analysis and is selling the Repurchased Shares of such Seller's own free will.

14. <u>Future Gains; Continuing Rights</u>. Each Seller hereby acknowledges that such Seller shall have no rights with respect to the Repurchased Shares following the Closing, as a stockholder of the Company or otherwise, including without limitation, with respect to any future sale, acquisition, merger, liquidation, dissolution or other corporate event regarding the Company or its assets (any of the foregoing, a "*Corporate Event*") and will not be entitled to the benefit of any future increase in the value of the Repurchased Shares following the Closing. Each Seller further expressly acknowledges that any such Corporate Event may result in the payment of assets, funds or other proceeds to the Company's stockholders, in a manner such that the value attributed to the Company's capital stock in such Corporate Event (either in the aggregate amount or on a per share basis) may be greater than the Repurchase Price payable to such Seller hereunder. Each Seller hereby acknowledges and agrees that such Seller will have no right to or interest in any such assets, funds or proceeds payable with respect to such Seller's Repurchased Shares following the Closing.

15. <u>No Brokers</u>. No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Company or any Seller.

16. <u>Inspection</u>. The Sellers shall be permitted access to the books and records of the Company, including its financial statements, at all such times as Sellers may reasonably request during normal business hours prior to the Closing.

17. <u>Governing Law; Venue; Jury Waiver</u>.

a. This Agreement shall be governed by and construed under the laws of the State of Delaware without regard to its conflict of laws principles. Any claim, action, dispute or controversy arising out of or relating to this Agreement, including any exhibits attached to this Agreement, or the transactions contemplated hereby, may be instituted in the federal courts of the United States of America or the courts of the State of Texas, in each case located in city of Austin and county of Travis, and each party hereby irrevocably submits to the exclusive jurisdiction of such courts.

b. EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING ANY EXHIBITS ATTACHED TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY. EACH PARTY CERTIFIES

SY_00005

AND ACKNOWLEDGES THAT: (I) NO REPRESENTATIVE OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION; (II) EACH PARTY HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER; (III) EACH PARTY MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY; AND (IV) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

18.    Attorneys' Fees and Costs; Interest. In the event a proceeding is filed for breach of or to interpret this Agreement, the prevailing party shall be entitled to recover costs of court and reasonable and necessary attorneys' fees and expenses incurred in connection with the proceeding.  If the Repurchase Price has not been paid in full on or prior to the 120th day after the Effective Date, then beginning on the 121st day after the Effective Date, interest shall accrue to each Seller hereunder at a rate equal to the lower of: (i) eighteen percent (18%) per annum or (ii) the maximum lawful interest rate, and shall continue to accrue until payment of the Repurchase Price, along with all accrued interest hereunder, are each paid in full.

19.    Amendments. No amendment of this Agreement will be effective unless it is in writing and signed by Sellers and the Company. No waiver of any provision of this Agreement will be effective unless it is in writing and signed by the party granting the waiver.  The Parties further acknowledge that they are not relying on any inducements, promises, statements, or representations other than those contained in this Agreement and its attachments.

20.    Severability. Should any provision of this Agreement be held unenforceable for any reason it will be deemed severed from the Agreement, the remainder of which will continue to be in force in their entirety.

21.    Counterparts.  This Agreement may be executed in any number of counterparts, by facsimile or electronic signature, each of which shall be considered an original, and all of which together shall constitute one instrument.

SY_00006

DocuSign Envelope ID: 807633BD-822F-475A-A4EF-A4CBFE333F6C

IN WITNESS WHEREOF, the parties hereto have executed this Stock Repurchase Agreement as of the date first set forth above.

COMPANY:

**Eve Financial, Inc.**

_____

Isaac Freckleton, Chief Executive Officer

SELLERS:

_____

Jason Subotky

_____

Jason Subotky Family Remainder Trust
By: _____

_____

Stephen Yacktman

_____

Ellyn Yacktman

_____

The Ellyn Yacktman Family Remainder Trust
By: _____

_____

The Stephen Yacktman Family Remainder Trust
By: _____

SY_00007

IN WITNESS WHEREOF, the parties hereto have executed this Stock Repurchase Agreement as of the date first set forth above.

**COMPANY:**

**Eve Financial, Inc.**

_____
Isaac Freckleton, Chief Executive Officer

**SELLERS:**

**Jason Subotky**

_Jason Subotky_

Jason Subotky, Individually

**Jason Subotky Family Remainder Trust**

_Jason Subotky_

Jason Subotky, Trustee

**Stephen and Ellyn Yacktman**

_Stephen Yacktman_

Stephen Yacktman, Individually

_Ellyn Yacktman_

Ellyn Yacktman, Individually

**The Ellyn Yacktman Family Remainder Trust**

_Stephen Yacktman_

Stephen Yacktman, Trustee

**The Stephen Yacktman Family Remainder Trust**

_Stephen Yacktman_

Stephen Yacktman, Trustee

SY_00008

**EXHIBIT A**

|  | Repurchased A Shares | Repurchased A-1 Shares | Certificate No. | Repurchase Price |
|---|---|---|---|---|
| Stephen and Ellyn Yacktman | 281,347 shares of Series A Preferred Stock | 38,756 shares of Series A-1 Preferred Stock | PA-001 PA1-003 | $749,777.26 |
| The Ellyn Yacktman Family Remainder Trust |  | 103,010 shares of Series A-1 Preferred Stock | PA1-002 | $241,280.32 |
| The Stephen Yacktman Family Remainder Trust |  | 103,010 shares of Series A-1 Preferred Stock | PA1-001 | $241,280.32 |
| Jason Subotky | 281,347 shares of Series A Preferred Stock |  | PA-002 | $658,999.08 |
| Jason Subotky Family Remainder Trust |  | 244,775 shares Series A-1 Preferred Stock | PA1-004 | $573,336.48 |

Aggregate Repurchase Price = $2,464,673.46

SY_00009

## EXHIBIT B

## STOCK POWER

**FOR VALUE RECEIVED**, the undersigned ("*Seller*"), hereby sells, assigns, and transfers unto Eve Financial, Inc. (the "*Company*"), _____ shares of the Company's _____, standing in the Seller's name on the books of the Company and evidenced by Certificates No. _____ respectively, and does hereby irrevocably constitute and appoint the Secretary of the Company as attorney to transfer the said stock on the books of the Company with full power of substitution in the premises.

**SELLER:**

_____

Signature:

Date: [_____], 2022

SY_00010

## EXHIBIT C

## COMPANY RESOLUTIONS

*[see attached]*

SY_00011

**EXHIBIT D**

**COMPLIANCE CERTIFICATE**

*[see attached]*

SY_00012