**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 23-43335-mxm |
| EVE FINANCIAL, INC., | § | |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | Subchapter V |

---

## DEBTOR'S FIRST AMENDED SUBCHAPTER V PLAN OF REORGANIZATION

---

DATED: March 15, 2024        **HAYWARD PLLC**

Charlie Shelton
State Bar No. 24079317
7600 Burnet Road, Suite 530
Austin, TX 78757
(737) 881-7101 (Phone/Fax)
Email: cshelton@haywardfirm.com

***Counsel for Eve Financial, Inc.***

### Article 1
### Definitions and Use of Terms

**1.01     Defined Terms**. Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

(a) **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503, that arose on or after November 1, 2023 in the Bankruptcy Case and that is entitled to administrative priority under to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against the Debtor and the Debtor's property under 28 U.S.C. § 1930.

(b) **Allowed Claim** means either: (i) a Claim against the Debtor or its property that is allowable under the Bankruptcy Code to the extent that a proof of claim, proof of interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, was late filed and as to which no objection has been filed or, if an objection has been filed, is allowed by a Final Order, unless otherwise provided in this Plan, or (ii) a Claim against the Debtor or its property that is scheduled and not listed as disputed, contingent or unliquidated, and as to which Claim no objection has been filed or, if an objection is filed, is allowed by a Final Order.

(c) **Bankruptcy Case** means the above-captioned Chapter 11 case pending in this Bankruptcy Court.

(d) **Bankruptcy Code** means the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

(e) **Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas, Ft. Worth Division, or such other Court that may have jurisdiction with respect to Debtor's Bankruptcy Case.

(f) **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's Bankruptcy Cases.

(g) **Bar Date** means the dates subsequent to which proof of a pre-petition Claim against the Debtor may not timely be filed or, with respect to proofs of claims held by governmental agencies, the dates by which those must be filed. The Bar Date for government agencies' Claims is April 29, 2024 and the Bar Date for all other Claims was January 10, 2024.

(h) **Claim** means (i) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(i) **Claimant** means any Person or entity having or asserting a Claim in the Bankruptcy Case.

(j) **Class** or **Classes** mean all of the holders of Claims or Equity Interests that the Debtor has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Articles VI and VII of this Plan.

**(k) Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

**(l) Confirmation Date** means the date on which the Confirmation Order is entered.

**(m) Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1191.

**(n) Contested Claim** means a Claim against the Debtor or its property that either (a) is listed in the respective Debtor's schedules of assets and liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court, unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has had or is subject to a pending objection or request for estimation filed by the Debtor or by any other party in interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**(o) Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Bankruptcy Code.

**(p) Debtor** means Eve Financial, Inc. The Debtor is a Delaware corporation and continues to serve as a debtor-in-possession in the Bankruptcy Case.

**(q) Effective Date** means the fifteenth day after the Confirmation Order becomes a Final Order.

**(r) Encina** means Encina Lender Finance, LLC together with its applicable affiliates.

**(s) Estate** means the estate of the Debtor created pursuant to 11 U.S.C. § 541.

**(t) Equity Interests** means the interest of the Members of Eve Financial, Inc., and all rights associated therewith, and all Claims arising from or relating to such Equity Interests, including but not limited to Claims for rescission.

**(u) Final Order** means an order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which the time to appeal (generally, fourteen days after entry) has expired and as to which a stay pending appeal has not been granted.

**(v) General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

**(w) General Unsecured Creditors** means a holder of a General Unsecured Claim but does not include the Judgment Creditors or any Judgment Creditor Claim.

**(x) Insider** has the meaning in § 101(31) of the Code. Insiders of the Debtor include, but are not necessarily limited to, Isaac Freckleton and Tim Walton.

**(y) Travis County Judgment** means the judgment taken against the Debtor pursuant to that certain Order Granting Final Summary Judgment entered on August 7, 2023 in Cause No. D-1-GN-22-006979 in Travis County, TX District Court (345th Judicial District).

**(z) Judgement Creditors** means Jason Subotky, individually and in his capacity as Trustee for the Jason Subotky Family Remainder Trust, Stephen Yacktman, individually and in his capacity as Trustee for the Stephen Yacktman Family Remainder Trust and the Ellyn Yacktman Family Remainder Trust, and Ellyn Yacktman, individually.

**(aa) Judgment Creditors' Claim** means the claim of the Judgment Creditors arising from either the Travis County Judgment or any proof of claim filed by the Judgment Creditors.

**(bb)**     **Lien** shall mean a contractual or statutory lien against or security interest in any Property of the Estate.

**(cc)**     **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a Person for purposes of 11 U.S.C. § 1102.

**(dd)**     **Petition Date** means November 1, 2023, and is the date on which the Debtor filed its petition for relief, commencing the Bankruptcy Case.

**(ee)**     **Plan** means this Subchapter V Plan of Reorganization dated January 30, 2024, as it may be amended, modified or supplemented by the Debtor from time to time as permitted herein and by the Bankruptcy Court.

**(ff) Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

**(gg)**     **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

**(hh)**     **Ordinary Course Professionals** means professionals hired by the Debtor pursuant to Court Order, including Hayward PLLC.

**(ii) Repurchase Shares** means those shares contemplated to be transferred pursuant to that certain Stock Repurchase Agreement entered into by and between the Debtor and the Judgment Creditors.

**(jj) Reorganized Debtor** refers to the new entity that emerges following Confirmation of the Plan, which shall be an entity with the same names as previously.

**(kk)**     **Secured Claim** means any Claim secured by a Lien or other charge or interest in property in which the Debtor have an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

**(ll)  Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

**(mm)**     **Unsecured Claim** means a Claim that is not a Secured Claim.

**(nn)**     **Stock Repurchase Agreement** means that certain Stock Repurchase Agreement entered into by and between the Debtor and Jason Subotky, Jason Subotky Family Remainder Trust, Stephen Yacktman, Ellyn and dated August 5, 2022 pursuant to which the Debtor agreed to repurchase certain A and A-1 Shares.

**(oo)**     Yacktman, The Ellyn Yacktman Family Remainder Trust, and The Stephen Yacktman Family Remainder

**(pp)**     Trust (

**(qq)**     **Structured Financing** means the financing provided, and contemplated by, the Structured Financing Documents.

**(rr)**     **Structured Financing Credit Agreement** means that certain Credit Agreement dated August 12, 2022 (as may be amended and modified from time to time in accordance with its terms).

**(ss) Structured Financing Documents** means the "Credit Documents" as defined in the Structured Financing Credit Agreement together with all other documents and agreements pertaining, or otherwise relating to, to the Structured Financing and servicing and other services provided by the Debtor in connection with same.

**(tt)** "Structured Financing Documents" means the "Credit Documents" as defined in the Structured Financing Credit Agreement together with all other documents and agreements pertaining, or otherwise relating to, to the Structured Financing and servicing and other services provided by the Debtor in connection with same.

**(uu)** **Unsecured Creditor** or **Unsecured Claimant** means any Claimant holding an Unsecured Claim.

**1.02** **Terms Defined in the Bankruptcy Code**. Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions, if any, given those terms in the Bankruptcy Code.

**Article 2**
**Background and Summary for Debtor's Bankruptcy Case**

**A. Description and History of Debtor's Business**

**2.01** The Debtor is a local Lehi, Utah business which operates a financial services tech company, founded in November 2019. Eve is focused on helping service businesses (dental offices, vet clinics, auto repair shops, and the like) finance their customers' purchases at the point of sale.

**2.02** Since its founding in 2019, Eve grew substantially through word of mouth and outbound sales efforts. Eve had, at one time, over 25 employees. However, in an effort to trim expenses and maximize the chances to save the company, Eve had to reduce its payroll down to six full-time employees.

**2.03** Eve began as a marketplace, serving to connect lenders to prospective credit applicants. In mid-2021, Eve began exploring the idea of becoming a credit issuer in the form of an Eve credit card which offered consumers four months of 0% APR following a transaction, in order to better service both the businesses and the consumers (the "Eve Credit Card"). The Eve Credit Card was intended to replace the marketplace as the new primary source of business. After nearly 18 months, Eve had contracts which allowed it to launch a consumer credit card, backed by MasterCard (the credit card rails), First Pryority Bank (the issuer), and Encina Lender Finance (a debt facility).

**2.04** Eve launched the beta of its credit card in March 2022, and began raising money in order to successfully conduct a market launch of the new program, following the final closing of its debt facility with Encina. Relationships with Eve's two earliest investors, Stephen Yacktman and Jason Subotky, deteriorated to the point that Mr. Yacktman and Mr. Subotky exercised a

blocking right to prevent Eve from raising money and closing its debt facility with Encina, preventing the launch of Eve's new primary product, the Eve Credit Card. This blocking right was used multiple times from March 2022 until June 2022.

2.05     Under the threat of business failure due to the inability to raise money and close its debt facility, in June 2022, Eve agreed to repurchase the majority of the preferred stock shares held by Messrs. Yacktman and Subotky for just under $2.5 million in an effort to prevent further blocking by Messrs. Yacktman and Subotky and to allow Eve to successfully launch its credit card program. Eve requested a minimum of 12 months to i) raise money in order to launch the credit card program; ii) launch the new product and begin generating revenue under the new product; and iii) raise money in order to complete the share repurchase. Messrs. Yacktman and Subotky demanded no more than four months to complete the share repurchase, otherwise they would continue to block the transaction. Eve agreed to the deal.

2.06     Shortly after agreeing to the timeline proposed by Messrs. Yacktman and Subotky, the capital markets for venture capital backed startups deteriorated significantly leading to the inability of many startups (especially financial tech companies) to raise capital. Eve was unsuccessful in raising sufficient capital.

2.07     At that point in time, Eve's board believed bankruptcy was the best path to saving the company and maximizing shareholder value. In filing the bankruptcy petition, the Debtor sought to come out of the bankruptcy with a clear plan for the future and profitable reorganization of its operations.

*Postpetition Events*

2.08     Since filing for bankruptcy, the Debtor has continued to operate its business in the ordinary course. No significant postpetition events have occurred.

## Article 3
## Plan Summary

3.01     This Plan proposes to pay the Debtor's creditors from future income for forty-four (44) months. This Plan provides for:

1 Class of Priority Creditors

1 Class of General Unsecured Creditors

1 Class of Judgment Creditors

1 Class of Equity security holders.

3.02 Creditors holding General Unsecured Claims will receive distributions as set forth below. The Plan proposes to pay the General Unsecured Creditors a pro-rata share of approximately $495,000 over five years. The Plan further proposes to pay the Judgment Creditors $1,000,000 over five years. This Plan also provides for the payment of certain Administrative Expense Claims and Priority Claims.

**All creditors and equity security holders should refer to Articles 6 through 7 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 4
### Means of Implementation and Ability to Make Plan Payments

**4.01   Continued Operations**. The Debtor, as a reorganized debtor, will retain all property of the Estate. The retained property shall be used and employed by the Debtor in the continuance of its business. The majority of the Plan payments contemplated hereunder will be funded from disposable income derived from future business operations.

The management, after confirmation of the Plan, shall remain as it was immediately preceding the initiation of the instant case. Namely, the following persons shall continue to serve in the roles indicated:

Isaac Freckleton – Chief Executive Officer

Tim Walton - Director of Finance

Dustin Millsaps – SVP of Operations

James Arroyo – Chief Technology Officer

**4.02   Debtor's Financial Projections.** A detailed analysis of the Debtor's projected income and expenses is set forth on the Projected Proforma referenced as **Exhibit A**. The Debtor's financial projections show that the Debtor will have sufficient projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the duration described in § 1191(c)(2).

The Debtor believes the Plan is feasible based upon the projected revenue of the Debtor's business and the financial condition of the Debtor. The financial projections for the Debtor

represent management's best estimation of the anticipated results of future operations based upon management's experience in the industry and its familiarity with the local market due to having operated the Debtor multiple years now. Despite the Debtor's best efforts, no one can guarantee that such projections will be realized or achieved and therefore creditors and other parties-in-interest should limit their reliance on such financial projections.

**4.03    Advance Payment of Claims.** Debtor may, in its own business judgment, make advance payments on Allowed Claims and must stay current on payments to all creditors under the plan.

**4.04    Consensual post-confirmation modification of plan terms**. Notwithstanding any provision set forth in this Plan, the Debtor and any particular Creditor provided for in this Plan may enter into any agreement(s) after confirmation which modifies that Creditor's treatment and payment terms, so long as such agreement is reduced to writing and signed by the Debtor's and consenting Creditor's authorized representatives. In such event, any modified agreement shall be deemed to supersede the terms of this Plan.

### Article 5
### Liquidation Analysis

**5.01**    The Court must find that all creditors and equity interest holders will receive at least as much under the Plan as they would receive in a chapter 7 liquidation process. Debtor's liquidation analysis is attached to the Plan as **Exhibit B**. The liquidation analysis assumes conversion of the Debtor's Chapter 11 case to a chapter 7 liquidation case on January 30, 2024, wherein it is assumed that the United States Trustee would appoint a chapter 7 trustee to liquidate the Debtor's bankruptcy estate.

5.02    The liquidation analysis assumes the value that a chapter 7 trustee would obtain for the property of the Debtor in a hypothetical liquidation and reflects the Debtor's estimates on the potential recoveries for the different categories of property. The administrative expenses assumed therein consist of claims entitled to administrative expense priority under section 503 of the Bankruptcy Code, including the chapter 7 trustee's statutory fees and professional expenses in liquidating the estate.

5.03 Further, Debtor's true value is as a going-concern business. The Debtor believes that liquidation under Chapter 7 would result in lower distributions to the Debtor's secured and priority

claimants and no distribution to the unsecured creditors.

## Article 6

### Treatment of Administrative Expense Claims, Priority Tax Claims, and Statutory Fees

Classification- Claims and Equity Interests are classified and treated as follows:

**6.01    Administrative Expense Claims.**

Administrative Expense Claims consist of expenses incurred during the chapter 11 case, which are approved by the Bankruptcy Court and expenses incurred in operating the Debtor's business. Most Administrative Expense Claims consist of claims by professionals employed by the Debtor in the Bankruptcy Case, which must be approved by the Bankruptcy Court. Other Administrative Expense Claims are claims arising post-petition, which may have not been paid. The Debtor has paid and intends to continue to pay normal post-petition operating expenses as they become due in the ordinary course of business. Debtor is aware of the following Administrative Claims:

| | |
|---|---|
| Subchapter V Trustee- Scott Seidel | Est. $8,000<br>Est. retainer held on March 6, 2023: $4,000 |
| Hayward PLLC | Est. $80,000. Current retainer held by Hayward: $16,684.50. |
| Encina Lender Finance, LLC | Unknown amount |

No Administrative Expense Claims (other than for the U.S. Trustee fees) shall be allowed except pursuant to Court order. Other than with respect to governmental units entitled to an administrative expense for the payment of an expense described in 11 U.S.C. § 503(b)(1)(B) or (C), any application for allowance of an administrative expense claim shall be filed within 60 days after the Effective Date or shall be barred.

Other than with respect to any Administrative Expense claims of Hayward PLLC and the Subchapter V Trustee, each of which are addressed herein, all Allowed Administrative Expenses shall be paid in full on the later of (a) the Effective Date (or as soon as practicable thereafter); (b) the date on which the Bankruptcy Court enters an order allowing such Administrative Expense; or (c) such later date as the Administrative Expense claimant and the Debtor may agree.

*Hayward PLLC and the Subchapter V Trustee*

The Debtor will pay any Allowed Administrative Expenses of Hayward PLLC and the Subchapter V Trustee (together, the "Estate Professionals") remaining owing after each Estate Professional's application of any funds held in retainer as follows:

Within fifteen (15) days after the date on which the Bankruptcy Court enters an order allowing such Administrative Expense, the Debtor shall pay any outstanding balance in full.

**6.02 Priority or Secured Tax Claims**. Each holder of an Allowed Secured and Priority Claims of Taxing Authorities will be paid in accordance with the treatment set forth below.

**6.03 Statutory Fees.** All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

### Article 7

### Treatment of Claims and Interests Under the Plan

The following classes of claims are based upon the proofs of claims filed against the Debtor and claims included in the filed schedules. Debtor has indicated proposed Plan payments in its Proforma attached as **Exhibit A**. The Debtor notes that it is not aware of having any secured creditors or ad valorem taxes.

**7.01    Class 1 – Priority Creditors**

The Debtor currently estimates this class to consist of one claim totaling $2,665.04.

Priority Unsecured Claims shall be paid in accordance with 11 U.S.C. § 1129(a)(9)(c) with the first payment due and payable on the first day that of the first month following the Effective Date. The Reorganized Debtor, in its sole discretion, will either pay such Claims: (i) on the Effective Date; or (ii) when such taxes become due and payable under the laws of the applicable taxing jurisdiction; or (iii) in accordance with the Plan payments set forth in **Exhibit A**.

All Tax Claims shall remain subject to section 505 of the Bankruptcy Code. The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code as to any Tax Claim. The Reorganized Debtor

may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any Tax Claim.

With respect to Allowed Secured or Priority Tax Claims, the interest rate paid upon such Claims shall be the rate of interest determined under applicable non-bankruptcy law.

Post-petition property taxes will be paid when such taxes become due and payable under the laws of the applicable taxing jurisdiction.

Nothing herein shall prohibit the Reorganized Debtor from selling property secured by a Tax Claim at any time provided that the remaining unpaid portion of the Allowed Secured Claim of a Taxing Authority holding an interest in the property and attributable to such property shall be paid in full at such time.

This class is not impaired and not entitled to vote.

### 7.03    Class 2 – General Unsecured Creditors

The Debtor estimates that this class consists of twenty-one (21) creditors, with claims totaling $630,577.46.

Holders of General Unsecured Claims are entitled to choose either of the following options:

*Option #1*

1) Receive a pro-rata share of payments to the Unsecured Creditor Fund, which such payments are set forth on Exhibit A (altogether, the "Unsecured Payments");.

*Option #2*

1) Receive common equity in the Debtor of a market value equal to the amount of such General Unsecured Creditor's allowed claim at a valuation of $20,000,000 for common equity (post-money valuation). Upon electing treatment under this subparagraph, such General unsecured Creditor's claim against the Debtor shall be deemed satisfied in full.

In the event the sum of Unsecured Payments exceeds the sum of General Unsecured Claims that are being treated under Option #1 in Class 2, then the Debtor shall be relived of any obligations to make any further Unsecured Payments to General Unsecured Creditors or any other creditor.

Class 2 is impaired and entitled to vote.

### 7.04    Class 3 – Judgment Creditors' Claim

The Debtor currently estimates this class to consist of 1 claim totaling $2,898,204.65 (which is the scheduled amount – the Debtor reserves all rights to object to this claim). The Debtor takes the position that the equity interests covered by the Stock Repurchase Agreement have been converted into a Claim against the Debtor and, therefore, the Judgment Creditors shall not retain any equity in the Debtor on account of such Repurchase Shares, as discussed in more detail *infra*. However, to the extent the Judgment Creditors had, as of the petition date (or acquired postpetition), an equity interest in the Debtor not contemplated or covered by the Stock Repurchase Agreement, then such shares are treated in accordance with Class 4 below. Further, pursuant to Section 510(b), this claim is subordinated to all other creditor claims in the instant bankruptcy case.

The Judgment Creditors' Claim shall be treated as follows:

Holders of a Judgment Creditors' Claim are entitled to choose either of the following options:

***Option #1***

1) The Judgment Creditors shall receive a pro-rata distribution of payments to the Judgment Creditors set forth on Exhibit A;

***Option #2***

1) Receive common equity in the Debtor of a market value equal to the amount of such Judgment Creditors' Claim (if allowed) at a valuation of $20,000,000 for common equity (post-money valuation). Upon electing treatment under this subparagraph, such Judgment Creditors' Claim against the Debtor shall be deemed satisfied in full.

In the event the sum of payments made to the Judgment Creditors exceeds the sum of Judgment Creditors' Claims that are being treated under Option #1 in Class 3, then the Debtor shall be relived of any obligations to make any further Judgment Creditor payments to the Judgment Creditors or any other creditor.

Class 3 is impaired and entitled to vote.

### 7.08    Class 4 - Allowed Equity Interests in the Debtor

The equity interest holders in Eve Financial, Inc. will retain their interests in the Reorganized Debtor. For the avoidance of doubt, unless the Judgment Creditors elect Option #2

from Class 3 above, the Judgment Creditors have, and shall have, no equity interest in the Debtor other than those interests that are *not* contemplated or covered by the Stock Repurchase Agreement.

## Article 8
### Allowance and Disallowance of Claims

**8.01   Delay of distribution on a Contested Claim**. No distribution will be made on account of a Contested Claim unless such claim is allowed by a Final Order.

**8.02   Settlement of Contested Claims**. The Debtor will have the power and authority to settle and compromise a Contested Claim with court approval and compliance with Rule 9019 of the Federal Rules of Procedure.

**8.03   Filing Objections**. Objections to Claims may be filed with the Bankruptcy Court and served upon each holder of the Claims to which objections are filed not later than sixty (60) days after the Confirmation Date, unless such time period is extended by order of the Court. Notwithstanding anything herein to the contrary, no distribution will be made on account of a Contested Claim unless and until such claim is allowed.

## Article 9
### Executory Contracts and Unexpired Leases

**9.01**   Except as set forth in Exhibit C to this Plan, all executory contracts or unexpired leases, not otherwise assumed or rejected by the Debtor prior to confirmation of the Plan, are rejected by the Debtor under the Plan as of the Effective Date. **Exhibit C**, to be provided in a plan supplement, will set forth the Executory Contracts the Debtor seeks to assume and the proposed cure amounts. For the avoidance of doubt, Debtor assumes all Structured Financing Documents, and its Structured Financing Obligations, and all such documents and obligations shall continue in full force and effect and Encina shall have, and retain, all remedies, rights and privileges provided or otherwise contemplated by the Structured Financing Documents or applicable law or equity.

**9.02** Proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 45 days after the date of the order confirming this Plan.

## Article 10
### General Provisions

**10.01 Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**10.02 Binding Effect**. Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Reorganized Debtor, the Debtor's Creditors, and the holder of the Equity Interest in the Debtor, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest holder has accepted the Plan.

**10.03 Permanent Injunction**. Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Reorganized Debtor, other than the Structured Financing Obligations or claims of Encina related to, arising from, or contemplated by, the Structured Financing Documents. Other than as set forth in this subsection, from and after Confirmation, all holders of Claims against the Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or the Reorganized Debtor or its assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor or the Reorganized Debtor or its assets; (c) from creating, perfecting, or enforcing any encumbrance or any kind against the Debtor or the Reorganized Debtor or its assets; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtor or the Reorganized Debtor except as may be allowed under the Bankruptcy Code; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however*, that each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan provided further, that nothing herein shall modify, amend or impact the Structured Financing Obligations or the Structured Financing Documents and Encina shall have, and continue to have, all rights, remedies and privileges provided or otherwise contemplated by the Structured Financing Documents or applicable Law. Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Comptroller's setoff rights under 11 U.S.C. § 553. This provision is not admission by

any party that such setoff rights exist.

**10.05 Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**10.06   Controlling effect**. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**10.07   Retention of Jurisdiction**. Until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor arising prior to the Confirmation Date, to hear and determine all causes of action that exist in favor of the Debtor that arise prior to the Confirmation Date (subject to applicable case law limiting such jurisdiction), to hear and determine all matters relating the administration of what was the Debtor's Estate, to modify the Plan, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with § 1142 of the Bankruptcy Code, including interpretation and implementation of the Plan and entry of a final decree.

**10.08   Vesting**. On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor complies with the terms of the Plan, including the making of all payments to creditors provided for in such Plan. If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

**10.09   Headings**. The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**10.10   Computation of Time**. In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

**10.11   *De Minimus* Distributions**. The Reorganized Debtor, will have sole discretion in making monthly payments to the general unsecured creditors and shall not make a distribution to any creditor under $30, unless that distribution results in the final payment to that creditor.

**10.12   Potential Causes of Action**. Unless otherwise specified, the Debtor retains any and all possible causes of action or legal claims that it currently possesses, including, without limitation, any cause of action against listed on Exhibit D, which will be filed as a supplement.

## Article 11
### Discharge

**11.01   Discharge.** If the Court confirms Debtor's Plan under § 1191(a), then the Debtor will receive a discharge of debts as specified in § 1141(d)(1)(A) of the Code except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) to the extent provided in § 1141(d)(6); or (iii) the Structured Finance Obligations or responsibilities and obligations arising from, or otherwise related to, the Structured Financing Documents.

If the Plan is confirmed under § 1191(b), then the Debtor shall receive a discharge of all debts provided in § 1141(d)(1)(A) and all other debts allowed under § 503 and provided for in the plan except any debt: (1) on which the last payment is due after the last plan payment; 2) the kind specified in § 523(a); or (3) arising from, or otherwise related to, the Structured Financing Documents, including the Structured Financing Obligations..

In the event that the plan is confirmed under § 1191(b), the Subchapter V trustee <u>will not</u> serve as a payment agent to the creditors under the Plan; Debtor will disburse payments according to the Plan payments set forth on Exhibit A.

## Article 12
### Default

**12.01 Default in Plan Payments**. Other than with respect to payments to the Texas Comptroller, if the Debtor fails to make a payment to a creditor pursuant to the terms of the Plan by the fifteenth day of the month in which such payment is due, then such a failure shall constitute an event of default. If there is an event of default, a Creditor must deliver to the Debtor a notice of default. Upon receipt of the notice of default, the Debtor shall have 14 days to cure such default. A Creditor may, upon the occurrence of a third event of default and after three such notices of default, whether such defaults are cured or uncured, accelerate its Allowed Claim(s) and declare the outstanding amount of such Claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.

A failure by the reorganized Debtors to make a payment to the Texas Comptroller pursuant

to the terms of the Plan shall be an Event of Default. If the reorganized Debtors fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Debtor: 2701 N. Thanksgiving Way, Suite 100, Lehi, UT  84043, Attn Chief Executive Officer, and upon Debtor's attorney at: Hayward, PLLC, 7600 Burnet Rd., Suite 530, Austin, TX  78757, Attn:  Herbert C. Shelton, Esq.; cshelton@haywardfirm.com.

The Debtors shall be allowed to cure up to two (2) defaults. Upon a third default, the Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of the debt.

**12.02   Conversion to Chapter 7**. Conversion of the Bankruptcy Cases to Chapter 7 shall be an additional remedy for default.

**12.03 Default to the IRS**. Notwithstanding any other provision herein, the debt owed by the Debtor to the Internal Revenue Service is a non-dischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if the Debtor should default, the Internal Revenue Service is not subject to the provisions of the Bankruptcy Code so that the Internal Revenue Service can take whatever actions are necessary to collect said debt in the event of default.

A failure by the Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the fifteenth (15th) day of each month. If there is a default, the Internal Revenue Service must send a written demand for payment, and said payment must be received by the Internal Revenue Service within fifteen (15) days of the date of the demand letter. The Debtor can receive up to three (3) notices of default from the Internal Revenue Service; however, on the third (3rd) notice of default from the Internal Revenue Service, the third (3rd) notice of default cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority, unsecured general and administrative priority.

The Internal Revenue Service is bound by the provisions of the confirmed Plan and is barred under Section 1141 of the Bankruptcy Code from taking any collection actions against the Debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the Internal Revenue Service). The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

The Debtor's failure to remain current on its ongoing tax obligations shall be an event of default under the terms of the Plan. The Debtor is required to stay current on all ongoing tax reporting/tax payments with the Internal Revenue Service. If the debtor defaults to the Internal Revenue Service (in the timely filing of any future tax return and/or the payment of any ongoing tax liability) this is an event of default to the plan term agreement. The Internal Revenue Service must send a written demand to the Debtor or Reorganized Debtor of the default and the Debtor must cure the default within fifteen (15) days of the date on the demand letter. If the default is not cured within fifteen (15) days, the Internal Revenue Service may assert the balance on the proof of claim still remaining which will include tax, interest and penalty to be due and owing and the entire balance (after crediting all payments made) may go out for collection.

Internal Revenue Service remedies upon default: Upon any final and non-curable default by the Reorganized Debtor, the Internal Revenue Service may accelerate its allowed pre- and post-petition claims (and any future administrative claims), and declare the outstanding amounts of such claims to be immediately due and owing. The Internal Revenue Service may pursue any and all available state and federal rights and remedies as provided by law without further order of this Court.

Date: March 15, 2024                    Respectfully submitted,

                                        **EVE FINANCIAL, INC.**

                                        By: */s/ Isaac Freckleton*
                                        Isaac Freckleton
                                        Managing Member

                                        */s/ Charlie Shelton*

Charlie Shelton
State Bar No. 24079317
**HAYWARD PLLC**
7600 Burnet Road, Suite 530
Austin, TX 78757
(737) 881-7100
cshelton@haywardfirm.com


**COUNSEL FOR
EVE FINANCIAL, INC.**